690 So.2d 1112 (1997)
Valerie C. RAGAS
v.
George J. RAGAS, Sr.
No. 96-CA-0979.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 1997.
Rehearing Denied April 15, 1997.
*1113 Roger I. Dallam, Greenberg & Dallam, Gretna, for Plaintiff/Appellant.
Daniel W. Nodurft, Nicholas S. Morphis, Sean D. Alfortish, Christopher J. Williamson, Nicholas S. Morphis & Associates, APLC, New Orleans, for Defendant/Appellee.
Before BYRNES, ARMSTRONG and JONES, JJ.
JONES, Judge.
Appellant Valerie Ragas appeals the judgment of the trial court which granted appellee George Ragas' motion to distribute funds. After reviewing the record and applicable law, we affirm as amended.
Pursuant to an order of the 24th Judicial District Court of Jefferson Parish in Case No. 403-481, George Ragas is obligated to pay child support to his former wife, Valerie Ragas, for the maintenance and support of their four minor children. George Ragas has never paid any of the court ordered child support and the children currently receive financial assistance from a governmental welfare program, Aid to Families with Dependent Children (AFDC).
Since May 14, 1991, Valerie Ragas has obtained four executory judgments on past due child support against George Ragas. These judgments were made executory in Orleans Parish on June 8, 1995, in accordance with the procedure set forth in the Louisiana Code of Civil Procedure.
Additionally, on June 8, 1995, Valerie Ragas acquired a writ of fieri facias to seize the interest of George Ragas in two lawsuits:
a) George Ragas, et al. vs. Tennessee Gas Pipeline, et al., Civil Action No. 94-2932 of the United States District Court for the Eastern District of Louisiana, and
b) George Ragas, et al. vs. Do D Xuan, No. 94-13102 of the Civil District Court for the Parish of Orleans.
In January, 1996, counsel for George Ragas and MGA Insurance Company entered into a settlement agreement in the Xuan case for the sum of $94,000.00, which was placed into the court registry. Thereafter, George Ragas' counsel filed a motion to distribute funds contending that the attorney fees, expenses and related cost incurred in the Xuan case exceed the sum deposited into the court registry and prime the rights of Valerie Ragas to said funds. The claim made by George Ragas and his counsel consisted of three components:

a) Attorney's fee of 40 % $37,600.00
b) Costs advanced by counsel
 (25 items) $28,296.75
c) Costs guaranteed by
 counsel (9 items) $40,325.93

The total cost of these three components is $106,222.68 or $12,222.68 in excess of the settlement funds.
On February 23, 1996, Valerie Ragas filed an opposition to the motion to distribute *1114 funds wherein she opposed several of the costs advanced ($17,155.28) and all of the costs guaranteed ($40,325.93). She contended that there remained more than sufficient funds in the court registry after payment of the unopposed costs ($48,741.47) to cover her claim of $39,596.82.
On February 28, 1996, the trial court conducted an informal contradictory hearing on George Ragas' motion to distribute funds. The court awarded the entire $94,000.00 to George Ragas finding that the attorney's fee and all advances and guarantees by counsel exceed the sum deposited in the court registry. This appeal followed.

DISCUSSION
Valerie Ragas first challenges the determination by the trial court that the expenses guaranteed by George Ragas' counsel are within the ambit of the attorney privilege established by Louisiana Revised Statute 9:5001.
LSA-R.S. 9:5001(A) provides that "[a] special privilege is hereby granted to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered thereby, either as plaintiff or defendant, to take rank as a first privilege thereon." LSA-R.S. 9:5001(A); Pullen v. Ziegler, 595 So.2d 1267, 1267 (La. App. 4th Cir.1992). Historically, the court was burdened with the task of determining what constituted an attorney's "professional fees" for the purposes of LSA-R.S. 9:5001 because this phrase was undefined by the statute. In 1989, however, this burden was lifted when "the legislature clarified the phrase `professional fees' as it [currently] appear[s] in La. R.S. 9:5001 to include the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association." Pullen, 595 So.2d at 1268; LSA-R.S. 9:5001(B). The Rules of Professional Conduct of the Louisiana State Bar Association relating to the professional fees of an attorney are found in Rule 1.8(e):
"A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) A lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter, and (2) A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client." Rules of Professional Conduct of the Louisiana State Bar Association, Rule 1.8(e); Dupuis v. Faulk, 609 So.2d 1190, 1192 (La. App. 3rd Cir.1992). Thus, the attorney privilege applies to attorney fees and expenses relating to litigation, including court costs.
Valerie Ragas asserts that expenses guaranteed are not covered by the attorney privilege because "guarantees" are not specifically addressed by either LSA-R.S. 9:5001 or Rule 1.8(e). She cites LSA-C.C. Art. 3185 to support this argument. "Privilege can be claimed only for those debts to which it is expressly granted...." LSA-C.C. Art. 3185; Southern Savings Assoc'n v. Langford Land Co., 372 So.2d 713, 714 (La.App. 4th Cir.1979). "Privileges are stricti juris and must be strictly construed." Southern Savings, 372 So.2d at 714. Nevertheless, we are compelled to find that the attorney privilege applies to expenses related to litigation, advanced or guaranteed, when strictly construed. Pullen, 595 So.2d at 1268-1270; Dupuis, 609 So.2d at 1192.
In Pullen, an attorney initiated a concursus proceeding to determine whether his law firm or a judgment creditor of the attorney's client had priority over proceeds of a tort judgment awarded to his client. The attorney argued that the total sum of the attorneys' fees, expenses incurred, and expenses guaranteed in regard to his client's law suit exceeded the total amount deposited in the registry of the court and that these costs primed any claim held by the judgment creditor.
"We find that Morris Bart has a privilege on the proceeds of the judgment ... This is consistent with the manner in which the statute has been applied heretofore. R.S. 9:5001 grants to attorneys a privilege of first rank for their fees on judgments obtained by them and on property recovered thereby. In Roberts v. Hanover Ins. Co., *1115 338 So.2d 158 (La.App. 2d Cir.1976) the court discussed the history of La.R.S. 9:5001. Act 124 of 1906 amended the attorney fee privilege provisions to subject not only the judgment but any property recovered thereunder to the privilege. The court held that attorneys are not `ordinary creditors' nor must they record their privilege."
Pullen, 595 So.2d at 1270. The relevant inquiry in an attorney privilege determination is whether the expense reasonably relates to the litigation. We find no significant difference between an attorney's advance or his guarantee of a litigation expense. In both instances, the attorney is standing in the shoes of his client and therefore, is entitled to assert the attorney privilege created by LSA-R.S. 9:5001. Accordingly, we hold that the expenses guaranteed by George Ragas' counsel prime any claim held by Valerie Ragas because these costs were related to litigation pursued on George Ragas' behalf. We do not hold today, however, that all guarantees made by an attorney are privileged.
Valerie Ragas next contends that not every sum actually expended by an attorney is subject to the attorney privilege. This contention is supported by case law. "We do not believe the legislature in granting the privilege vested lawyers with the sole authority to categorize as expenses all funds they desire to spend and charge to a client's account. An attorney asserting the privilege has an evidentiary responsibility to establish the nature and association of the charged expenditure with the pending litigation." Bixenman v. Radlauer, 647 So.2d 565, 567 (La.App. 3rd Cir.1994).
Valerie Ragas specifically challenges the determination by the trial court that 10 of the items which the appellee enumerates as costs advanced are privileged. The contested costs advanced include costs for fuel, office supplies, parking, internal office administration, car repairs, car rental, car purchase, wrecker service, and witness transportation. After reviewing the record, we find that four of these items, given their nature, are not entitled to privilege.
Costs incurred by an attorney that are incidental to the administration of a case are not privileged expenses. We believe that the three items listed in this case as "file set up costs ... $150", "gas ... $31", and "office depot ... $86.81" reflect such incidental expenses and thus, are not entitled to privilege.
We further determine that the item listed as "assignment of proceeds ... $6,500.00" fails to qualify as a privileged expense. This item refers to a 1986 BMW automobile which George Ragas purchased from his attorney on credit. LSA-R.S. 9:5001 contemplates "amounts advanced by the attorney ... on behalf of the client" to a third party, for example an expert witness, not to the lawyer himself acting in a personal capacity. Thus, we agree with Valerie Ragas' contention that a lawyer who sells his own car ought not be allowed to claim said sale as an assignment of proceeds of the client's claim and thereby, be entitled to also claim it as an privileged advance.
Additionally, evidence (check vouchers, receipts, ledger sheets, contracts, and etc.) was introduced at the contradictory hearing which established the nature and association of all other costs advanced with the Xuan case. Therefore, with the exception of the costs listed as file set up, gas, office supplies, and assignment of proceeds, we hold that the costs advanced were properly classified as privileged by the trial court.
Moreover, we find no merit in Valerie Ragas' contention that several of the transportation expenses advanced (payments to Autoworks, Inc., Don Bohn Ford, and Agency Rent A Car) for George Ragas are not entitled to privilege. In Louisiana State Bar Assoc'n v. Edwins, 329 So.2d 437, 444-445 (La.1976), the court held that the attorney's payment of three car notes and costs for tires, on behalf of his client, qualified as living expenses and as such were proper advances. Likewise, George Ragas' transportation expenses were proper and are thus, privileged.
Accordingly, the judgment of the trial court is amended to delete the items listed as "file set up costs ... $150", "gas ... $31", "office depot ... $86.81", and "assignment of *1116 proceeds ... $6,500.00" as these items are not entitled to privilege. The judgment of the trial court is affirmed in all other aspects.
AFFIRMED AS AMENDED.
BYRNES, J., concurs with reasons.
BYRNES, Judge, concurring with reasons.
Because the record contains no evidence of the client's need for the advance of living expenses, I must respectfully disagree with that portion of the majority opinion recognizing the attorney's privilege on advances for George Ragas' transportation expenses, which the majority opinion characterizes as living expenses. By dispensing with the necessity of proving need the majority effectively guts the limitations on the privilege.
In this case the majority opinion cites the case of Louisiana State Bar Assoc'n v. Edwins, 329 So.2d 437 (La.1976), for the blanket proposition that living expenses advanced by the attorney are subject to the attorney privilege. But that is not what the Edwins case stands for. In Edwins the Supreme Court hedged about its approval of living expense advances with severe restrictions limiting it to the narrowest of situations, where there was a showing of necessitous circumstances:
We are unwilling to hold that the spirit or the intent of the disciplinary rule is violated by the advance or guarantee[1] by a lawyer to a client (who has already retained him) of minimal living expenses, of minor sums necessary to prevent foreclosures, or of necessary medical treatment.
* * * * * *
If an impoverished person is unable to secure subsistence from some source during disability, he may be deprived of the only effective means by which he can wait out the necessary delays that result from litigation to enforce his cause of action. He may, for reasons of economic necessity and physical need, be forced to settle his claim for an inadequate amount.
We do not believe any bar disciplinary rule can or should contemplate depriving poor people from access to the court so as effectively to assert their claim.
* * * * * *
In the present case, the evidence[2] [emphasis added] shows that, between June 1970, (when Edwins retained by Thomas) and June 1972, (when the case was settled), some twenty-four months later, Edwins advanced to Thomas $2,152.87 of living expenses (including car notes, etc.), plus $579.25 for needed medical attention. During this same period of time, Thomas drew $3,472 in maintenance and cure, which was also available for the client's living expenses.
At the time Thomas retained Edwins, he was not receiving maintenance and cure. Without charge to Thomas, Edwins secured the payment of maintenance and cure in the amount of $56 weekly. Also, likewise without charge to Thomas, Edwins handled various debt negotiations and other legal advisory and representational services not related to the accident case for which he had been retained.
During that same two-year period, a two person non-farm family with income below $5,422 (a little below $2,716 per year average) fell below the poverty level. The maintenance and cure of $3,472 received by Thomas during this period was insufficient even for the minimum subsistence level of the poorest people in our economy. [Emphasis added.]

Edwins, 329 So.2d at 445-447.
The attorney in Edwins also made advances to another client, but failed to show that client's need. The Supreme Court dealt harshly with the attorney:
These cash advances violate the prohibition of Disciplinary Rule 5-103(B). Unlike the advances made to Thomas (Specification *1117 1(c) above) for necessary [emphasis added] living and medical expenses, no justification is shown for them. In the absence of such justification, we apply the literal wording of the rule and presume that the advances were improperly made with the intention of securing or keeping legal representation of Selzer.
* * * * * *
For this deliberate and unexcused violation, we deem disciplinary action required, as set forth above.

Edwins, 329 So.2d at 448.
I agree with the proposition stated by the majority opinion that:
An attorney asserting the privilege has an evidentiary responsibility to establish the nature and association of the charged expenditure with the pending litigation.
Bixenman v. Radlauer, 647 So.2d 565, 567 (La.App. 3 Cir.1994).
Following the reasoning of the majority, the burden is on him who would assert the privilege to show that the advances for transportation expenses which the majority characterizes as living expenses fall within the narrow exception created by Edwins. There is no evidence in the record to support this exception.
Apparently the trial judge subscribed to the same error as that found in the majority opinion, i.e., that it is sufficient to show that the law firm advanced the living expenses without a showing of need. The trial judge in the course of the hearing below made the general statement:
"They just have to show that they treated this as an advance."
Dupuis v. Faulk, 609 So.2d 1190 (La.App. 3 Cir.1992), quotes from Edwins and adds that:
The testimony of Mr. Dupuis clearly illustrates the dire circumstances requiring advancement of medical expenses and living expenses.

Dupuis, 609 So.2d at 1193.
Unlike Dupuis, there is no testimony or other evidence of need in the record to justify the advance of living expenses. If we eliminate the requirement that need be shown we take a giant leap down the slippery slope to eventually allowing a privilege or virtually all advances because "living expense" is nebulous enough term that it would include almost anything the client wanted in life (including the BMW in this case.) if there is no requirement that need be shown. This would totally undermine the intent of the privilege statute and Rule 1.8(e) of The Rules of Professional Conduct of the Louisiana State Bar Association.
Additionally, where a privilege for attorney fees and advances is asserted for an amount that exceeds a total recovery for the purpose of defeating a father's support obligation, there is that much more reason to adhere to the prevailing line of cases that hold that privileges are to be strictly construed. Surely, there is no public policy favoring the liberal extension of the attorney privilege to the detriment of a father's obligation to support his family.
Pullen v. Ziegler, 595 So.2d 1267 (La.App. 4 Cir.1992), is inapposite. In Pullen this Court was called upon to decide the effective date of the attorney privilege. There is no mention of advances for living expenses in Pullen.
With the exception of the view expressed by the majority that would recognize the attorney privilege for advances made to George Ragas for transportation/living expenses in the absence of proof of need, I agree with the balance of the majority opinion, and note that the amounts which I would reject even when cumulated with the amounts rejected by the majority opinion are insufficient to change the outcome of this case.
For the foregoing reasons, I concur in the result reached by the majority.
ARMSTRONG, J., concurs with reasons.
ARMSTRONG, Judge, concurring with reasons:
I agree with the concurring opinion that some threshold showing of need is required for the privilege to apply to advances or guarantees for necessary living expenses, and that the record is lacking in this respect *1118 as to certain transportation expenses. Courts must be vigilant in limiting these situations to necessitous circumstances. Nevertheless, since, as the concurring opinion correctly points out, the amounts of these questionable expenses are insufficient to change the outcome of this case, I concur.[1]
NOTES
[1] This statement by the Supreme Court that the attorney privilege applies to guarantees as well as advances lends further support for the holding by the majority (with which I agree) that the attorney privilege extends to "guarantees," assuming, of course, that the guarantee if for a qualified purpose.
[2] There is no evidence of need in the record in the instant case.
[1] I also note that counsel for the defendant assured the court at oral argument in the instant case that the plaintiff will be able to satisfy her judgments out of the proceeds of the other suit covered by the writ of fieri facias issued to the plaintiff, George Ragas, et al. v. Tennessee Gas Pipeline, et al., 94-2932, in the United States District Court for the Eastern District of Louisiana.